JUDGE KATHLEEN C.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| YAZMIN GONZALEZ, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| CONSUMER LEGAL GROUP P.C. a New York | § |
| Professional Limited Company, | § |
| | § |
| Defendant. | § |

EP23CV0187

# COMPLAINT

Pro Se Plaintiff Yazmin Gonzalez files this Complaint against Defendant Consumer Legal Group P.C. for violations of (1) the federal Telephone Consumer Protection Act ("TCPA") and its regulations and (2) the Texas Business and Commerce Code ("TBCC") law governing telephone solicitation, alleging as follows:

## INTRODUCTION

1. Beginning in April 2023, Plaintiff began to receive a barrage of illegal telemarketing calls and pre-recorded voicemail messages made on behalf of Defendant Consumer Legal Group P.C. ("Consumer Legal") by an unknown anonymous telemarketer operating under the name Easy Finance, soliciting financial relieve.

2. Plaintiff seeks redress under the TCPA and TBCC, demanding that the calls stop.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Counts I, and II under 28 U.S.C § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227.

1

*See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

4. The Court has supplemental jurisdiction over Counts III under 28 U.S.C § 1367.

5. This Court has personal jurisdiction over Consumer Legal because Defendant purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant's purposeful contacts with Texas and the litigation:

   a) Defendant targets Texas when marketing legal services and regularly conducts business in this District, including telephone solicitation.

   b) Its agent Easy Finance, called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Consumer Legal's services.

   c) These calls to Texas Plaintiff injured Plaintiff in Texas, creating a causal link among Defendant, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

   d) Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES AND OTHER ENTITIES

6. Plaintiff YAZMIN GONZALEZ is a natural person domiciled in Texas who received the incessant and intrusive calls made on behalf of Defendant to market legal services.

7. Defendant CONSUMER LEGAL GROUP P.C. ("Consumer Legal") is a professional corporate law firm organized and existing under the laws of New York and can be served via registered agent USACORP INC at 325 Division Ave, Ste 201, Brooklyn, NY, United States, 11211.

8. Unnamed party EASY FINANCE ("Easy Finance") is an unknown business entity, through information and belief, operating offshore and outside of the jurisdiction of the United States. Easy Finance operates web address https://www.easyfinanceusa.com/. Easy Finance has a purported email address of support@easyfinance.ai. The .ai extension is the internet country code Anguilla, a British overseas territory in the Caribbean.

## FACTUAL ALLEGATIONS

9. The TCPA was enacted to protect consumers' privacy interests by prohibiting unwanted, repetitive, and invasive telephone solicitations.

10. Plaintiff successfully registered her phone number ending in -1859 on the National Do-Not-Call Registry ("DNC") in March 2022.

11. Consumer Legal hired Easy Finance to place telephone solicitation phone calls because Consumer Legal is barred by ethics from directly placing unsolicited phone calls on their own behalf.

12. On May 1, 2023, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas telephone solicitation registration for either Defendant Consumer Legal or Easy Finance.

13. Plaintiff is the subscriber to a cellular telephone service for this phone number, uses the phone for residential purposes, and does not use the telephone for any business purposes.

14. On or about April 2023, Plaintiff began receiving calls and pre-recorded voicemail messages from Defendant to her El Paso-area cellular telephone number 915-XXX-1859.

15. Plaintiff did not have any credit card debt and was so aggravated with the phone calls she pretended to be a coworker whom she knew to have debt in order to ascertain who was behind the illegal calls.

16. On April 10, 2023, at 12:38 PM Plaintiff answered one of the calls there was a pre-recorded message stating the following:

> "Hey this is Kayla from Financial Relief..."

17. Plaintiff followed the prompts and then was connected to an agent who identified herself as "Mary from financial relief." Mary asked Plaintiff qualifying questions, it was not until after Plaintiff answered all the qualifying questions that Mary identified Defendant Easy Finance.

18. Mary then sent two separate emails to Plaintiff one from the email address mary@easyfinanceusa.com. and notifications@clixsign.com. containing a retainer from Defendant Consumer Legal.

19. Plaintiff ended the phone call by telling Mary she will review the contract and call her if she was interested in the services.

20. Later the same day at 3:50 PM agent Mary called Plaintiff pressuring her to sign the contract without being given enough time to review documents. Plaintiff told Mary she was not interested and not to call anymore and disconnected the call.

21. Plaintiff received additional calls and voicemails with a pre-recorded message leaving a call back number 213-418-9338.

22. On April 11, 2023, Plaintiff called the number in paragraph 21 and it turned out to again be agent Mary.

23. TABLE A below displays calls made to Plaintiff's phone number ending in -1859.

TABLE A:

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1. | 04/05/2023 | 11:32 AM | 989-260-6652 | Missed Call. Pre-recorded Voicemail |
| 2. | 04/07/2023 | 11:00 AM | 989-260-6658 | Missed call. Pre-recorded Voicemail |

4

| 3.  | 04/10/2023 | 12:37 PM | 862-347-3219 | Missed call. Pre-recorded voicemail |
| 4.  | 04/10/2023 | 12:38 PM | 862-347-3219 | Pre-recorded message. Mary sent contract |
| 5.  | 04/10/2023 | 12:58 PM | 917-983-4285 | Text message with clixsign link |
| 6.  | 04/10/2023 | 3:50 PM  | 213-797-8978 | Not interested. DNC Request |
| 7.  | 04/12/2023 | 11:34 AM | 415-537-9263 | Missed call. Pre-recorded voicemail |
| 8.  | 04/17/2023 | 11:45 AM | 213-797-8978 | Missed call. |
| 9.  | 04/20/2023 | 1:50 PM  | 213-797-8978 | Missed call. |
| 10. | 04/28/2023 | 12:52 PM | 720-449-8978 | Missed call. Pre-recorded voicemail |

24. Plaintiff did not have an established business relationship with Defendant, nor did Plaintiff consent to any of these calls.

25. Plaintiff did not provide her phone number to Defendant at any point.

26. On information and belief, Consumer Legal used an automated telephone dialing system, as defined by 47 U.S.C. § 227(a)(1), to make calls.

27. Plaintiff infers an ATDS was used because:

   a) Several calls came in rapid succession, including four calls within three minutes on two different occasions;

   b) Plaintiff heard a long pause and dead airtime upon answering calls but before being connected to a live agent; and

   c) Random or sequential generation explains how Defendant obtained and dialed Plaintiff's number, considering Plaintiff did not give it to Defendant or otherwise consent to the calls.

5

28. Defendant's placement of nonemergency telephone calls to Plaintiff's cellular telephone using an ATDS without Plaintiff's prior express consent violated 47 U.S.C § 227(b) and 47 C.F.R. § 64.1200(a).

29. Defendant's placement of multiple calls within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC Registry since March 2022, violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

30. Defendant's violations described in paragraphs 28-29 were knowing and willful because CONSUMER LEGAL had "reason to know, or should have known, that [its] conduct would violate the statute." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001). Bad faith is not required.

31. CONSUMER LEGAL knew or should have known that its conduct would violate the TCPA and its regulations because CONSUMER LEGAL operates in a highly regulated telephone solicitation industry.

32. CONSUMER LEGAL knew or should have known the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the calls complained of herein violated the TCPA and its regulations.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

33. Plaintiff has been denied the use of her phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had her privacy invaded by the harassing telemarketing calls.

34. The calls harmed Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

35. Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed to her on behalf of Defendant.

36. The calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff

## VICARIOUS LIABILITY OF CONSUMER LEGAL FOR EASY FINANCE'S TCPA VIOLATIONS

37. Consumer Legal is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as Easy Finance. In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

38. Consumer Legal markets legal representation through direct telephone solicitation by its hired telemarketer Easy Finance, who act on its behalf. Easy Finance transfers live, hot leads to Consumer Legal and Consumer Legal accepts the leads. Easy Finance was Consumer Legal's agent when it made the prohibited calls on behalf of, and with the actual authority from, Easy Finance pursuant to a contract that governs Easy Finance's telemarketing for Consumer Legal.

39. Consumer Legal directs, controls, authorizes, and pays Easy Finance to generate leads for Defendant's legal services through telephone solicitation. Moreover, it requires, authorizes, or at least permits Easy Finance telemarketers to solicit explicitly for Debt Relief.

40. Consumer Legal sets the criteria for qualifying leads, which must follow, and Easy Finance live-transfers leads qualified on those criteria exclusively to Consumer Legal. Plaintiff is unaware of the qualifying thresholds, but the salient question is whether the potential client had some type dept.

41. On information and belief, Consumer Legal writes or at least approves the call script Easy Finance telemarketers use when qualifying leads for Consumer Legal.

7

42. Easy Finance telemarketers are Consumer Legal's associates and do nothing to disturb the impression that Easy Finance telemarketers work for, and speak and act on behalf of, Consumer Legal.

43. From Easy Finance telemarketer's initial call through Defendant Consumer Legal's acceptance of a completed representation application, the telemarketing of Consumer Legal's legal representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Consumer Legal, the principal, with Easy Finance acting as Consumer Legal's agent.

44. Easy Finance, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Consumer Legal's criteria.

45. Easy Finance is an offshore entity and failure to hold Consumer Legal vicariously liable would encourage companies to offshore telemarketing operations and make enforcement of the TCPA virtually impossible.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

46. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

47. Defendant and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least seven (7) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using a pre-recorded message without her prior express written consent.

48. Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

49. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

50. Plaintiff is also entitled to and does seek an injunction prohibiting the Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using a pre-recorded messages and/or without prior express written consent

## COUNT II – DNC Violations
### Violation of the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)

51. Plaintiff incorporates by reference each and every paragraph of this complaint as if fully set forth herein.

52. The TCPA prohibits telephone solicitation of residential telephone subscribers whose numbers are registered on the National Do-Not-Call Registry, 47 U.S.C. § 227(c)(5).

53. Even though Plaintiff's number has been registered on the National DNC Registry since March 2022, CONSUMER LEGAL GROUP made unsolicited telephone solicitations to Plaintiff's residential telephone line, without Plaintiff's consent, and thereby violated 47 U.S.C § 227(c) and 47 C.F.R. § 64.1200(c) (the "DNC Violations").

54. Plaintiff suffered the following injuries from each and every ATDS Violation: invasion of privacy; intrusion on Plaintiff's right of seclusion; occupation of Plaintiff's telephone line by unwelcome calls, rendering the phone unavailable for legitimate calls; inconvenience; loss of usefulness of Plaintiff's phone; unnecessary expenditure of Plaintiff's phone's battery power; degradation of the battery; and trespass to Plaintiff's chattel, namely her cellular telephone.

55. Under § 227(c)(5), Plaintiff is entitled to receive up to $500 in damages for each violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c). Because the violations were knowing and willful, *see* Paragraphs 31-33, the Court may award up to $1500 per violation.

56. Accordingly, Plaintiff seeks and order under Section 227(c)(5) awarding $1500 for each DNC Violation.

## COUNT III
### Violation of Tex. Bus. Org & Com. Code § 302.101

57. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

58. In addition to the harm of illegal telephone solicitations, Texas law recognizes the difficulty of holding businesses that make them accountable.

59. To address that problem, Texas law requires "sellers" engaged in telemarketing to register with the state and provide the public the information necessary to hold a seller accountable: the seller's legal name, any assumed names, any organizational documents, the address for the principal place of business, each phone number used in telemarketing, names of officers and directors, and the name and address of the agent for service of process. Tex. Bus. & Com. Code § 302.001. *et. seq.*

60. The registration requirements reflect an important public policy of Texas: to "protect persons against false, misleading, or deceptive trade practices in the telephone solicitation business." *Id.* § 302.003. The law must be "liberally construed and applied to promote [that] purpose." *Id.* Moreover, sellers must post financial security to ensure their compliance, and an "attempted waiver of a provision of this chapter is void." *Id.* §§ 302.004, 302.107.

61. Chapter 302 defines a "seller" as a "person who makes a telephone solicitation on the person's own behalf." Id. § 302.001(5), A "telephone solicitation" is "a telephone call a seller or

10

salesperson initiates to induce a person to purchase, rent, claim, or receive an item." *Id.* § 302.001(7). "Item," in turn, means "property or a service." *Id.* § 302.001(1). Legal services is an "item." *Id.* § 302.001(1).

62. CONSUMER LEGAL is a "seller" because it makes telephone solicitations on its own behalf through salespersons, including both (a) those it "employ[s]" – such as "Mary" and those it 'authorize[s] – such as third-party telemarketers. Id. § 302.001(4)-(5). The "items" it induces purchasers to receive are legal services. And the called parties are "purchasers" because they are "solicited to become...customers for [the legal services].' Id. § 302.001(3).

63. CONSUMER LEGAL engages in "telephone solicitation" because they initiate telephone calls to induce legal representation from CONSUMER LEGAL's. Id. § 302.001(1), (3), (7).

64. Because "a person makes a telephone solicitation if the person effects at attempts to effect a telephone solicitation," telephone calls initiated by "Mary," are attributable both to them individually and to CONSUMER LEGAL. *See Id.* § 302 (emphasis added).

65. Texas law requires those whose products or services are offered through telephone solicitation from or to a location located in Texas to provide information about their telemarketing activities and obtain a registration certificate from the State. Tex. Bus. & Com. Code § 302.101. The purpose of the requirement is to "protect persons against false, misleading, or deceptive practices in the telephone solicitation business." *Id.* at 302.003. CONSUMER LEGAL effected the solicitations because it brought about and made them happen by employing or authorizing these salespersons to make the telephone solicitations and paying them to do so. *See* Effect, Black's Law Dictionary (11th ed. 2019) ("To bring about; to make happen.").

11

66. Because the telephone solicitations were made to Plaintiff, a "purchaser located in this state" of Texas, CONSUMER LEGAL was obligated to comply with the registration and related requirements of Texas Business & Commerce Code § 302.001, *et seq.*

67. Defendant failed to comply, committing numerous independent violations of Texas law, including at least the following:

    a) Failure to obtain a certificate of registration for the business locations(s) from which each of the telephone solicitations was made;

    b) Failure to post the registration certificate in a conspicuous place at each such location;

    c) Failure to post in close proximity to the registration certificate the name of each individual in charge of the location;

    d) Failure to file an addenda providing the required registration information for each salesperson;

    e) Failure to make available at each location a copy of the entire registration statement and any addenda for inspection by a purchaser or by a representative of a government agency; and

    f) Failure to post a $10,000 bond, letter of credit, or certificate of deposit to secure Defendant's compliance with Chapter 302.

    g) Failure to appoint Texas' Secretary of State agent for service of process.

    h) Failure to provide the complete street address of both (i) the location from which each solicitation was made and (ii) Defendant's principal location.

68. Each solicitation is a separate violation for which CONSUMER LEGAL is subject to a penalty up to $5,000. *Id.* § 302.101, 302.302(a).

69. Defendant's violations of Chapter 302 harmed Plaintiff because she had to spend hours to track down information that should have been publicly available. To this day, Plaintiff does not have sufficient information about CONSUMER LEGAL, the locations from which the calls were made, and the persons responsible for them.

70. Plaintiff seeks to recover from Defendant "a civil penalty of not more than $5,000 *for each violation*."

71. Plaintiff is further "entitled to recover all reasonable costs prosecuting this action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

    A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

    B.    A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

    C.    An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

    D.    An award of $1500 per call in statutory damages arising from the TCPA § 227(b) intentional violations jointly and severally against the corporation for seven (7) calls;

    E.    An award of $1500 per call in statutory damages arising from the TCPA § 227(c) intentional violations jointly and severally against the corporation for ten (10) calls;

    F.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 for nine (9) calls;

G. An award to Ms. Gonzalez of damages, as allowed by law under the TCPA;

H. An award to Ms. Gonzalez of interest, costs and attorneys' fees, as allowed by law and equity;

I. Such further relief as the Court deems necessary, just, and proper.

Dated: May 5, 2023,

Respectfully submitted,

_____

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859

## I. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 5, 2023,

_____

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859